WASHINGTON, Plaintiff-Appellee, v. REPUBLIC STEEL CORPORATION, Defendant-Appellant.

Ohio Appeals, Seventh District, Mahoning County.

No. 3639.   Decided April 2, 1954.

Andrew L. Johnson, Youngstown, for plaintiff-appellee.
Harrington, Huxley & Smith, Youngstown, for defendant-appellant.

## OPINION
By PHILLIPS, J.

Each of the parties to this appeal moved for verdicts to be directed in their favors at the close of all the evidence introduced in the court of common pleas in plaintiff's appeal thereto from a finding of the Industrial Commission of Ohio denying upon rehearing her claim of right to participate in the Workmen's Compensation Fund of Ohio because of the death of George Washington, to whom she was married, with whom she was living as husband and wife, and upon whom she was wholly dependent for support when he was seen last alive seated on a larry car, holding his head on his hands, about seventy feet from a skip bucket over one of defendant's blast furnaces, where George Washington was employed, about 8:30 o'clock P. M. on February 4, 1949.

The trial judge sustained plaintiff's motion, granted defendant cor-

poration, a self-insurer under the Ohio Workmen's Compensation Act, leave to withdraw its motion, of which it did not avail itself, dismissed the jury, heard arguments of counsel, overruled defendant's motion for the "verdict to be entered in its favor notwithstanding" the written verdict of the trial judge returned against it and overruled its motion for a new trial, and subsequently entered judgment accordingly.

Defendant appealed to this court on questions of law from the judgment of the trial judge.

In her petition filed in the court of common pleas plaintiff alleged inter alia as follows:—

"Plaintiff further says that on the 4th day of February, 1949, her said husband, George Washington, deceased, was an employee of said defendant corporation under a contract of hire, working as a larry car operator's helper in stock house No. 5 of the blast furnace department, located in its Center Street plant in the City of Youngstown, County of Mahoning and State of Ohio, and then and there while in the course of his employment was injured and killed by inhaling poison mill gases, falling into a certain large iron skip bucket, covered over with a larry car load of limestone, carried up to the top of a certain large blast furnace and dumped therein together with said larry car load of limestone and certain other kinds of iron and steel producing materials wherein his body was completely burned and destroyed, and that her decedent's said injuries and death were then and there sustained in the course of and arose out of his said employment."

There is no direct evidence that George Washington is dead nor alive, and no one testified to seeing him fall into the skip bucket.

Counsel for defendant by brief in his summary of the circumstantial character of the evidence upon which plaintiff relies to establish her claim, which we adopt in part as part of the factual statement of this opinion, which is supported by the 452 page bill of exceptions, says:—

"(1) Since George Washington was seen by Stuart sitting on the auxiliary larry car he has not been seen either at work, at his home in Youngstown, or, according to the testimony of his brother, anywhere in the places where he had formerly lived. (2) George Washington had worked for substantial wages regularly for a number of years and was considering an advancement in pay as shown by the testimony of the foreman. He had worked steadily up until the very moment that he was last seen. (3) George Washington had prepared to eat his lunch and had sent for a bottle of milk both of which were untouched. (4) The record does not show any domestic, financial, or personal difficulties which would have prompted him to depart from Youngstown or to remain away from the usual places to which he was accustomed. (5) George Washington's street clothes were found in his locker and if he left the plant he did not change to his street clothes. (6) Washington did not leave the plant by checking out through the gate which was the usual method of leaving. (7) Immediate search failed to disclose his presence at or near the place where he was last seen. (8) There is proof that George Washington was affected by the gas present in the plant and was subjected to the same conditions to which Stuart was subjected."

While there is no direct evidence that the skip bucket to which reference has been made was operated nor its contents dumped into defendant's blast furnace from the time George Washington was seen last in defend-

ant's steel plant until operation was resumed after having been stopped for investigation of the cause of escaping gas, there is a conflict in the testimony that "there must have been an error in the manual rotation in which material was loaded into defendant's blast furnace."

Defendant contends that there is no evidence that George Washington met death in any manner nor at any time in its steel plant, but that "there were other ways that he could have left the plant, namely, through the railroad yards at the east or the west of the plant around the wall near the blast furnace to the east or to the west or it was possible to proceed through the fence at the edge of the plant."

Defendant contends that the issues are:—

"(1) As presented by plaintiff's evidence the uncontroverted facts show that plaintiff's husband, allegedly deceased, could not have met his death in the manner set forth in the petition.

"(2) The court arrived at a finding of death from trauma in the course of employment by making an inference purely conjectural in nature based on a prior inference, a procedure contrary to law.

"(3) No inference or presumption of fact can prevail over uncontroverted facts to the contrary.

"(4) The evidence produced by the plaintiff and supported by the defendant furnishes only a basis for a choice among different possibilities as to what has happened to George Washington, and plaintiff accordingly has failed to sustain the burden of proof as to the issues presented by her petition."

There is no evidence that any person saw George Washington leave defendant's steel plant on or after February 4, 1949.

The trial judge after discharging the jury said:—

"Now, gentlemen, I am going to decide this right now because it is all in my mind and I don't want this to get cold, if it would get cold it would be an awful job to get it back in my mind.

"I am finding a written verdict for the plaintiff which will be entered and there will be no judgment entered at this time, the judgment will be reserved so that Mr. Clark may file a motion N. O. V. in order to protect his record and the questions raised.

"Now, as to the important findings of fact, first, and I am going to begin at the tail end: Is George Washington dead or alive or, to put it in the past tense, was George Washington dead or alive immediately after February 4, 1949? That is to be determined by an answer to this question: What, under all this evidence, are the probabilities? Preponderating weight of the evidence, of course, means by the greater weight of the probabilities, so that we can reduce that question to this: is it more probable he was still alive after that date? When you analyze all this evidence the conclusion can only be in my judgment that it is more probable under all this record that he was killed and was dead before the end of the day of February 4th.

"Going back one step: How did he come to his death? Is it more probable that he left the plant and died in the river or in some other way? Is it more probable that he came to his death outside of that stockhouse or outside the blast furnace equipment? Or is it more probable he came to his death in and near the job where he was working? I have to resolve

that under all the evidence he came to his death at and near the place where he was working.

"Now, the death must directly flow from an accidental injury. The law on that is **140 Oh St 300**, and reads:

" 'To restate the law under the present statute the term "injury" as used in the Workmens Compensation Act, comprehends a physical or traumatic damage or harm, accidental in its origin and character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.'

"There isn't any doubt there was a toxic gas in that stockhouse and that Stuart was affected by it and had to be taken to the hospital. What are the probabilities then as to whether Washington was affected by that toxic gas? Is it more probable that he was or that he wasn't? I can reach only the conclusion it is more probable that he was, and that as a direct result of that effect upon him he accidentally fell or dropped into either hole or into one of the holes which, by the mechanism described, leads to the top of the blast furnace. So that I have here an accidental injury directly causing him harm and from which accidental injury he directly came to his death at the blast furnace. Is that more probable or is it more probable that he walked out of the stockhouse and walked away and was never seen or heard from since?

"Don't forget that he apparently was happily married, no domestic troubles according to the record and no reason in the world why he should run away from his wife and home. Apparently he was a hardworking man, the record shows that that is true.

"So that the conclusion of fact, the findings of fact, by the court is that he sustained an accidental injury in the nature of being gassed by this sewer gas which directly caused him to fall or drop into a hole, as a direct result of which he came to his death by being carried up in the skip bucket and dropped into the blast furnace, and that that is found by the greater weight of the probabilities under all the evidence in the case. The conclusion of law that is flowing therefrom is that the death is compensable under the Workmens Compensation Act, based on what I read from **140 Oh St,**— for an accidental injury within the scope of his employment directly and proximately causing the death of the decedent."

By assignments of error defendant claims "error in the admission of testimony at the trial over defendant's objection, to which rulings of the court exceptions were taken"; that the court erred in "sustaining plaintiff's motion for a directed verdict"; that the court erred "in overruling defendant's motion for a directed verdict"; that "the verdict and judgment is not sustained by sufficient evidence"; that "the verdict and judgment is against the weight of the evidence"; that "the verdict and judgment under the evidence adduced is contrary to law"; and that there are "other errors of law as disclosed by the record."

Appellant's counsel has failed to call our attention to "other errors of law as disclosed by the record," as alleged as a ground of error, or to comply in respect thereto with the provisions of Rule VII of this court that his briefs "shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record. as is necessary to show how the questions arose, together with a

statement of the authorities relied upon." Accordingly we will not pass upon this assigned ground of error.

We have read the voluminous bill of exceptions and record of the proceedings had in the court of common pleas and the lengthy briefs of counsel for the respective parties submitted, and the numerous cases cited by them to us, and conclude that we can not reverse the judgment of the trial court on any of the grounds urged by counsel for defendant by assignment of errors, argument, or briefs.

The judgment of the court of common pleas is affirmed.

GRIFFITH, PJ, NICHOLS, J, concur in judgment.